## SCHUERMANN v. UNION CENTRAL LIFE INSURANCE COMPANY, Appellant.

**Division One, December 17, 1901.**

1. **Insurance:** MISREPRESENTATIONS: TRIAL BY JURY: STATUTE. In a suit brought by the beneficiary upon an insurance policy, the defendant company can not compel the court as a chancellor to exercise its equity powers and declare the policy void as having been

Vol 165 mo—41

Schuermann v. Union Central Life Ins. Co.

obtained through fraud, by simply pleading that false representation was made by the insured in his application therefor which induced the company to issue the policy. The liability of the company, under the statute, after it has become matured by the death of the insured, can only be avoided by showing that some misrepresentation made by the insured induced the company to issue the policy, and that the matter misrepresented contributed to his death, and this defense is strictly legal, triable by a jury, and would be such without the statute declaring the issues in such cases shall be tried by a jury. The statute does not enlarge or curtail the court's equity powers, and, hence, is not in anywise contrary to the constitutional provision declaring that no one shall be deprived of his property without due process of law, and that no one shall be denied the equal protection of the law.

2. ————: ————: ————: AVOIDING POLICY AFTER INSURED'S DEATH. The liability of an insurance company to injury, because of having issued a policy upon the false representations of the insured, terminates upon the death of the insured. If the matters falsely represented did not contribute to his death they would not avail the company as a defense; if they did, they are a complete defense to a suit on the policy. Hence, no court should be called upon to exercise its equity powers to do the useless thing of formally annulling a policy. not capable of possible future injury to any one.

3. **Method of Procedure**: VESTED RIGHT. A litigant has no vested right in a mere form of procedure heretofore adopted by the State or in force at a given time. Matters that may be considered equitable may be made triable by a jury without violating a litigant's right under the Constitution to equal protection of the law, nor does such change deprive him of his property without due process of law.

4. ————: ————: EQUAL PROTECTION: CLASSES: INSURANCE. The Legislature may designate the class of a community enjoying particular privileges to be brought within the operation of a particular law, without denying to the persons affected by it equal protection of the law; for instance, it is proper for it, in order to break up the practice of certain insurance companies of inserting in their policies a stipulation to the effect that any untrue statement, however immaterial and regardless of the intent of the insured, should invalidate the policy, to enact a law to the effect that it should be the province of the jury to determine whether or not the untruthful representation contributed to the risk, and if it did not, such false statements should not avoid the policy.

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) A contract procured through fraud is voidable at the election of the party defrauded. If the other party asserts a right or attempts a recovery on such contract, and the injured party desires to defeat such right or such recovery by reason of the fraud, he must resort to a suit in equity to set aside the contract, and where such resort to equity is made in a pending case, it should be separately and finally disposed of before any other issues are tried. Och v. Railroad, 130 Mo. 27; Hancock v. Blackwell, 139 Mo. 454. (2) The answer admitted the plaintiff's cause of action, and sought affirmative relief from the same, on equitable grounds. The entire case was thus converted into one in equity, to be governed by the rules of equity practice. The equity jurisdiction having once attached, it should be retained until complete justice is done. The court therefore erred in denying the defendant's request for a trial in equity, and in trying the case as an action at law, before a jury, over the objection of defendant. Hodges v. Black, 8 Mo. App. 389; s. c., 76 Mo. 537; Schuster v. Schuster, 93 Mo. 443; Allen v. Logan, 96 Mo. 591; Woodward v. Martin, 106 Mo. 362; Wendover v. Baker, 121 Mo. 289; O'Day v. Conn, 131 Mo. 325; McCollum v. Boughton, 132 Mo. 620. (3) The court erred in holding that section 5849, Revised Statutes 1889, prevented defendant having the relief sought by its answer, on account of the policy sued on having been secured by fraudulent representations and suppression of the truth. That statute only modifies the doctrine of "warranties" in insurance law, and does not destroy the right to invoke the power of courts of equity to annul contracts of insurance procured by fraud. White v. Ins. Co.,

4 Dill. 177; Hermany v. Ins. Co., 151 Pa. St. 17; Ins. Co. v. Bank, 72 Fed. 418; Mengel v. Ins. Co., 35 Atl. 197; Zepp v. Grand Lodge, 69 Mo. App. 494; Ashford v. Ins. Co., 80 Mo. App. 638; Van Cleave v. Ins. Co., 82 Mo. App. 682. (4) As construed and applied by the court, section 5849, Revised Statutes 1889, is violative of section 30, article 2 of the Constitution of Missouri, and of section 1, article 14 of the amendments to the Constitution of the United States, because, as so construed and applied it deprives the defendant of its property without due process of law, and denies the defendant the equal protection of the laws. Cooley's Const. Lim. (4 Ed.), 490, s. p. 391; Barbier v. Connolly, 113 U. S. 27; Yick Wo v. Hopkins, 118 U. S. 356; Dent v. West Va., 129 U. S. 114; Railroad v. Ellis, 165 U. S. 150; State v. Loomis, 115 Mo. 314. The stipulation that policy shall be incontestible, does not preclude defense on ground of fraud in procuring the policy. Welch v. Union Cent. Life Ins. Co., 78 N. W. 853.

*Seneca N. Taylor, Charles Erd* and *Seneca C. Taylor* for respondent.

(1) Sections 5849 and 5850, Revised Statutes 1889, entered into and became a part of this insurance contract. This statute is constitutional and conclusively binding on the appellant. Thassler v. Life Ass'n, 67 Mo. App. 505; Ampleman v. Ins. Co., 35 Mo. App. 314; Daggs. v. Ins. Co., 136 Mo. 382; Havens v. Ins. Co., 123 Mo. 403; Hanford v. Mass. Ben. Ass'n, 122 Mo. 59; Oshkosh Co. v. Ins. Co., 71 Wis. 454; Thompson v. Ins. Co., 45 Wis. 388; Reily v. Ins. Co., 43 Wis. 388; Ins. Co. v. Leslie, 24 N. E. Rep. (Ohio), 1072; Emry v. Ins. Co., 52 Me. 322. (2) It is for the State to determine what class of cases shall be tried by jury. What is due process of law in the State is regulated by the law of the State. Walker v. Sauvinet, 92 U. S. 90; Murrey v. Hoboken L. & I. Co., 59 U. S. 376; Dent v. West Virginia, 129 U. S.

114; Ellenbecker v. Plymouth County District Court, 134 U. S. 31.   Where rights are created or limitations prescribed by statute, and a procedure pointed out for the enforcement of these, that procedure is exclusive, unless waived by both parties.   Sauter v. Leveridge, 103 Mo. 622; Earl v. Hart, 89 Mo. 270; Kitchen v. Railroad, 59 Mo. 515.   Aside from the statute giving the respondent a right to trial by jury, it could not be said the court erred in the simple fact of calling a jury, as was done in the case at bar.   Estes v. Fry, 94 Mo. 271; Cox v. Cox, 91 Mo. 78; Reed v. Bott, 100 Mo. 67.   The law which applies alike to all persons in the same business, answers all constitutional requirements of uniformity.   Express Co. v. St. Joseph, 66 Mo. 675; St. Louis v. Sternberg, 69 Mo. 301; St. Louis v. Spiegel, 75 Mo. 147; St. Louis v. Bowler, 94 Mo. 630; State v. Julow, 129 Mo. 176.   (3)   Insurance companies make their own conditions, and these should be construed most strongly against them.   Burnett v. Insurance Co., 68 Mo. App. 345; Hoffman v. Accident Indemnity Co., 56 Mo. App. 301; Renshaw v. Ins. Co., 103 Mo. 611.   (4) Where the construction of a life policy is doubtful, it should be resolved in favor of the assured.   Ethington v. Ins. Co., 55 Mo. App. 134; Hale v. Ins. Co., 46 Mo. App. 509; La Force v. City Ins. Co., 43 Mo. App. 519; Ins. Co. v. Wiler, 100 Ind. 92; Reynolds v. Ins. Co., 47 N. Y. 597; Hoffman v. Ins. Co., 32 N. Y. 405; 1 Wood on Fire Ins. (2 Ed.), sec. 60; May on Ins. (2 Ed.), sec. 175.   (5)   The court should not only affirm the judgment in this case, but it should also assess ten per cent damages on the amount of the judgment, for this is just.   Secs. 2303, 2305, R. S. 1889; Linnenkohl v. Winkel-meyer, 54 Mo. App. 574; DeBule v. Labadie, 7 Mo. App. 578; Smith v. White, 17 Mo. App. 443; Utz v. Hore, 20 Mo. App. 37; Reber v. Railroad, 38 Mo. App. 346; Milling Co. v. Coquard, 40 Mo. App. 41.   In the last case it was held, a demand for an affirmance with damages held warranted on the ground that every proposition urged by the appellant had been

determined adversely to him by prior decisions of the Supreme Court and this court. Osborn v. Oliver, 23 Mo. App. 667. It is a common practice in the Federal courts, where a writ of error is sued out for delay, to award the defendant in error ten per cent damages. Halmer v. Arthur, 131 U. S. 60; Railroad v. Volk, 151 U. S. 73; Mining Co. v. Star, 141 U. S. 222; Wilson v. Everett, 139 U. S. 616. And the same rule obtains in the highest courts of the State of New York. Warner v. Tessner, 33 N. Y. 296; Mayor v. Carmen, 38 N. Y. 25; Winfield v. Potter, 38 N. Y. 67; Sentems v. LaDeau, 140 N. Y. 463; Deginer v. Underwood, 30 N. Y. Sup. 399.

ROBINSON, J.—This is an action against the appellant, the Union Central Life Insurance Company, to recover on a policy of insurance issued on the life of respondent's husband, Henry Schuermann. The petition is in the usual form, containing all essential averments.

The amended answer, upon which the case was tried, among other things avers that the plaintiff's husband in his application for insurance, made certain false representations and statements, as to the past and present condition of his health, and his habits of sobriety, etc., fully detailed and set out. It then avers that plaintiff's husband at the time knew said representations and statements as made were false, but that the defendant relied upon and believed them to be true, and that but for its belief and reliance therein and thereon, it would not have issued the policy in suit. The answer then sets out the amount of premiums received, and avers the deposit of same in court to the use of plaintiff as soon as it learned of the falsity of the insured's statements contained in his application for insurance, and prayed that the court, in the exercise of its powers as a court of equity, decree the policy to be null and void, and for naught held, and for such other relief as the court might think it entitled to under the facts of the case.

To defendant's answer plaintiff replied denying each and every allegation thereof, and as a further affirmative reply alleged that her deceased husband stated and represented in his application for insurance that he was a moderate drinker, and that the defendant company knew that fact, and knowing it induced deceased to take out the policy in suit, and further averred that said insured died of dropsy, a malady in no way provoked, caused or influenced by any of the conditions about which the insured is alleged to have made false and untrue statements and representations. Other averments were made in the reply, unnecessary to recite in the present consideration of the case. Upon the case being called for hearing both parties announced ready for trial and the plaintiff demanded a jury. Thereupon the counsel for defendant objected to a jury being impaneled, or to the trial of the case before a jury, for the reason as stated that "under the pleadings the defendant was entitled to have the issues, presented in its answer, tried before the judge as a chancellor sitting as a court of equity; that it was entitled to a trial in equity and without a jury to determine the issues raised as to whether or not the policy of insurance relied upon in the petition was obtained by fraud, and because it was improper to submit such issues to a jury, and proceed in the case as upon an action at law," all of which objections made by defendant, were overruled by the court, and a jury was duly impaneled and the cause was proceeded with before them, resulting in a verdict upon which a final judgment was entered. From that judgment this appeal has been prosecuted by defendant.

Several minor objections have been made to the action of the trial court, that arose during the progress of the taking of testimony, which counsel for appellant, in his brief filed herein, concede are of no material consequence now, if the action of the court in submitting the case to the determination of the jury, and denying to defendant a hearing in equity, was proper.

The maintenance of the judgment of the court below depends upon the construction the trial court put upon section 7890, Revised Statutes 1899, which reads as follows:

"No misrepresentation made in obtaining a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury."

The court construed this section to mean (as applied to the conditions of this case) that in trials at law upon policies of insurance issued on the life of any person or persons, no defense on the grounds of misrepresentations made by the insured in obtaining or securing the policy, should be availing to the company to defeat its liability thereunder, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy became due and payable, and whether the misrepresentations pleaded by defendant, as contributory to that end, was true or not, was a question for the determination of the jury.

Appellant contends that this ruling of the trial court is erroneous for two reasons: first, because section 7890, above mentioned, was not designed to cut off equitable relief for fraud perpetrated against insurance companies under similar circumstances when other parties between themselves might have such relief; and further, to quote appellant's exact language, "because the statute is not as broad as the court construed it to be, but is only intended to modify the rule of law applicable to insurance policies, commonly spoken of as the doctrine of warranties; and, second, 'if the law was intended to be, as it was construed by the trial court, then it is void because it violates the sections of the State and Federal Constitution mentioned in point four of the brief," which sections are section 30 of article 2 of the Constitution of Missouri, and

section 1 of article 14 of the amendments of the Constitution of the United States; declaring that no one shall be deprived of his property without due process of law, and that no one shall be denied the equal protection of the law.

Just what appellant means by the statement, "but that it (sec. 7890) was only intended to modify the rules of law applicable to insurance policies commonly spoken of as the doctrine of warranties," is not quite clear from the use of the language employed. Yet it is quite manifest from the argument of counsel for appellant throughout his brief filed in the case, that he has given to the trial court's construction of the section in question a scope and meaning not contemplated by the court, and one not called for in the disposition of the case presented to it. Under the facts of this case the trial court was not required to pass upon, nor did it so determine, the question now so strenuously charged to it by appellant, of holding that section 7890, supra, deprived courts of equity of their ancient power and authority of avoiding contracts in order to relieve one of the parties thereto from the fraudulent practice of the other. That question was not properly before the court. This was an action at law to recover upon a policy of insurance issued by appellant on the life of plaintiff's husband, that had matured by his death, from causes disclosed by the pleadings. Section 7890, in one sense, may be said to be nothing more than a legislative declaration of policy, that in actions at law, upon policies of insurance, their consideration must be proceeded with to final determination before a jury, and that no misrepresentation made in obtaining or securing same, shall be deemed material in that proceeding, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy became due and payable.

The act in question was in no sense intended as a general restraint upon the power of courts of equity, by proper proceedings to relieve against actual fraud perpetrated or at-

tempted against insurance companies doing business in this State, by parties seeking insurance; but its manifest aim and object was to check and prevent the wrongs and injustice that too frequently befell the relatives and friends of the insured after their death, resulting from the growing evil practiced by life insurance companies, of calling for answers to all manner of immaterial questions from the applicant for insurance, bearing in the remotest degree, if at all, upon the risk to be assumed, and then by a general provision, incorporated in the policy to be issued, declaring that if any one of the answers be untrue, or not as stated, it should avoid the policy, which condition without legislative aid, the courts were compelled to enforce without regard to whether the particular answer that was shown to be untrue was material to the risk or not, or whether the untrue answer was the result of an innocent mistake or an intentional wrong.

Although the defendant in closing its answer prays "that the court, in the exercise of its powers as a court of equity, will decree the contract to be null and void, and that it be for naught held, and for other proper relief," etc., there is nothing of facts stated in the answer that can be said to have introduced into it an equitable defense, or that operated to convert the case into one of equity calling for its trial by the court, independent of the consideration of how section 7890, directs that all such cases (as the one at bar) shall be tried, and for that reason alone there is no merit in appellant's contention, that it was denied a hearing before the court as a chancellor in equity. The defense of fraud, as set up in this case, against a legal demand, before as after the enactment of section 7890 presented an issue that was properly triable by jury, and the trial court did appellant no wrong in so ruling.

While there is no doubt in the mind of the writer, that since the passage of the act in question, an insurance company in this State, as before the act, could by a proper proceeding in equity have annulled and for naught held a contract of

insurance that had been obtained by false and fraudulent representations made by the insured, as to the condition of his or her health or as to his or her habits of temperance, or for any other statement made, that would tend to make the risk assumed by the company less hazardous than the true fact of the case would indicate, the consideration of that question was not in this case, and the trial court did not undertake to so determine, when it refused defendant's request to try the case as a court of equity without the aid of a jury.   The liability of defendant on the policy in suit, matured by the death of the plaintiff's husband, and that liability under the act in question, could only be avoided by showing that some misrepresentation or misrepresentations made by the insured in obtaining same, actually contributed to his death.   As said, that is a legal defense strictly, triable by a jury, whether the section in question had so designated it be tried as such or not.

As the cause which resulted in the death of the insured and fixed the liability of the defendant company (to-wit, his death from dropsy) was not in any way superinduced or influenced by the insured's habits of intemperance, etc., which it is alleged in defendant's answer he fraudulently withheld from and positively misstated to defendant to procure the issuance of the policy in suit, but was the result of an entirely independent malady which the policy in suit was intended to insure the life of plaintiff's husband against, it would be more than a useless requirement to tolerate a proceeding, having for its object the annulment of the policy, on account of particular answers made by the applicant for insurance which could never possibly affect the question of defendant's present fixed liability.   Why have the court to go through the useless form of having a contract annulled on account of conditions therein or connected with its original issuance, that could never possibly affect the question of defendant's further liability, now that the party insured was dead and the life of the policy had expired.

Defendant might with propriety have instituted its suit in equity, against plaintiff's husband before his death, for the purpose of having the contract of insurance issued by it annulled on account of the false and fraudulent statements (now alleged in its answer to have been made) to include the issuance of the policy, that an end to a risk fraudulently induced not voluntarily assumed, might be terminated, but after the policy had been duly issued, and all liability under it has matured on account of a contingency therein provided against, not influenced by or in any way brought about through the condition of health or habits of intemperance of the insured, which it is alleged he withheld from and positively misstated to the defendant in his application for insurance, such a suit could serve no useful purpose.

As far as concerns defendant, its liability to harm on account of the policy in suit terminated in the death of the insured. If the alleged misrepresentations made by him, did not actually contribute to the cause of the insured's death, they could never result in a possible harm to defendant in the future, and for that reason no court should be called upon to do the useless and foolish thing of formally declaring annulled a contract not capable of possible future injury to any one, whatever the nature or form the proceeding might assume, or the character of the court to which it was addressed.

To appellant's second contention that the section in question is violative of section 30 of article 2 of our State Constitution, and of article 14 of the amendments of the Federal Constitution, it is sufficient to say that defendant had no vested right in a mere form of procedure heretofore adopted by the State or in force at a given time; and further that it is within the province of the Legislature to designate (as in the act in question) the class of the community to be brought within the operation of a given law, without necessarily rendering the law obnoxious to the criticism leveled at it by appellant, that it denies to the parties influenced by it equal

protection of the law, or deprives them of its property without due process of law, or contrary to the law of the land.

While equality of rights and privileges should be the general aim of all laws, and special restrictions and burdens imposed its strict exception, yet laws have ever been enacted by the State, and sustained, since the adoption of our present Constitution, as before its adoption, which were made to operate against certain classes of the community only, when that class has occupied some peculiar position, or when it has been clothed with some peculiar opportunities not enjoyed by the remainder of the community.   As said before, life insurance companies in this State, prior to the adoption of section 7890, could, and by a practice almost universal, did, insert in their policies a stipulation to the effect that any untrue statement or answer made by the applicant for insurance (regardless of its materiality or regardless of the intent of the applicant in making same) should avoid the policy, and too frequently when demands were made upon them for the obligations of the policies the companies availed themselves of these harsh provisions without a return by them of the money which they had obtained from the insured in his lifetime, and when the untrue statements made had little if any effect upon the risk undertaken by the insurer.   This doctrine of warranties, in the extent to which it had grown and was applied, was something peculiar to insurance companies, and was therefore thought the subject of special legislation, in a law which properly undertook to affect insurance companies alone in that particular.   By a long and hurtful practice of a given policy peculiarly their own, insurance companies had stamped themselves as a class, to which alone legislation might properly address itself, in that regard.   Seeing no error in the action of the trial court, its judgment is affirmed.

*Brace, P. J.,* and *Marshall, J.,* concur.   *Valliant, J.,* not sitting, having tried the case below.