MAGGIE LYNCH, Respondent, v. PRUDENTIAL IN-
SURANCE COMPANY OF AMERICA, Appellant.

St. Louis Court of Appeals, October 1, 1910.

1. **TRIAL PRACTICE: Conflicting Evidence: Jury Question.**
Where there is evidence on both sides of an issue of fact,
the question is one for the jury.

2. **LIFE INSURANCE: Warranties: Misrepresentations: Statute.**
Under section 7890, Revised Statutes 1899, a false statement
in an application for life insurance that insured had not been
treated by physicians and was in sound health does not avoid
the policy, unless he was treated for the disease which after-
wards occasioned his death. Such a misrepresentation is not
a warranty, under the statute, and is wholly immaterial, unless
about a condition that actually contributed to the death of
insured.

3. ————: ————: ————: ————: **Jury Question.** By express
provision of section 7890, Revised Statutes 1899, whether the
matter misrepresented in obtaining a life policy contributed
to the contingency or event on which the policy became pay-
able, so as to avoid it, is for the jury.

4. ————: ————: ————: **Statute Applies to Policy Provisions
and Application.** Section 7890, Revised Statutes 1899, abro-
gates the distinction, which obtained at common law, between
warranties and representations in life insurance contracts, and
applies to a stipulation in the policy that, unless insured was
in sound health when the policy was issued, it should not take
effect, as well as to misrepresentations in the application.

5. ————: **Willful Fraud in Procuring Policy: No Defense, When:
Statute.** Though willful fraud is practiced in obtaining a pol-
icy of life insurance, if it consists in matter of fact inducing
the issue of the policy, it will, under section 7890, Revised
Statutes 1899, be regarded as a material defense in a suit on
the policy only when it appears to have been about a matter
that actually contributed to the cause of death.

6. ————: ————: **Beneficiary Aider and Abettor.** The fraud of
insured in obtaining life insurance not being such as would,
under section 7890, Revised Statutes 1899, be a defense to an
action on the policy, it is immaterial that the beneficiary aided
and abetted him therein.

7. **APPELLATE PRACTICE:** Improper Argument of Counsel: Necessity of Exception. To obtain a review, on appeal, of the question of improper remarks of counsel in argument, an exception thereto must have been preserved at the time, and it is not sufficient to invoke the matter for the first time in the motion for new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*Fordyce, Holliday & White* for appellant.

(1)   The judgment should be reversed, as the verdict was against the great weight of the evidence and for the wrong party, and the issues were not submitted to the jury by proper instructions.   Morelock v. Railroad, 112 Mo. App. 640; Schmidt v. Rankin, 193 Mo. 254.   (2)   The court erred in refusing defendant's instruction number 3 and in excluding from the case the defense that there had been a breach of a condition precedent and that this policy had never taken effect.   25 Cyc. Life Insurance, p. 810; Thompson v. Travelers Ins. Co., 13 N. D. 444, 101 N. W. 900; Cable v. Life Ins. Co., 111 Fed. 19; Plumb v. Life Ins. Co., 108 Mich. 94; Laughlin v. Gerardi, 67 Mo. App. 380; May v. Crawford, 150 Mo. 528.   (3)   The court erred in excluding testimony tending to support the defense that this policy was obtained by plaintiff's fraud, and in refusing defendant's instruction number 4 submitting this defense to the jury.   Scheurman v. Life Ins. Co., 165 Mo. 641; Summers v. Metropolitan, 90 Mo. App. 691; Keller v. Home Life Ins. Co., 198 Mo. 440; Life Ins. Co. v. Minch, 53 N. Y. 144; March v. Life Ins. Co., 186 Pa. 629; Scanlan v. Gulick, 199 Mo. 449. (4)   The court erred in refusing to permit Dr. Herman to state how long in his opinion Michael J. Lynch had been suffering from paresis before the doctor first saw him on August 12, 1907.   Keller v. Life Ins. Co.,

95 Mo. App. 627; Modern Woodmen v. Angle, 127 Mo. App. 94; Davey v. Aetna Life, 38 Fed. Rep. 650; Aetna Co. v. Ward, 140 U. S. 76. (5) The court should have granted defendant a new trial on account of the repeated use of improper and inflammatory language by counsel for plaintiff in his address to the jury. Wilburn v. Railroad, 48 Mo. App. 224; Evans v. Town of Trenton, 112 Mo. 390; Beck v. Railroad, 129 Mo. App. 7.

*James J. O'Donohoe* for respondent.

(1) The introduction in evidence of the policy and proof of the death of the insured made plaintiff's prima facie case. Mulroy v. Knights of Honor, 28 Mo. App. 463; Stewart v. Legion of Honor, 36 Mo. App. 319; Force v. Knights of Honor, 41 Mo. App. 106; Chadwick v. Triple Alliance, 56 Mo. App. 474; Gruwell v. Knights and Ladies of Security, 126 Mo. App. 496; Dazell v. Fidelity & Casualty Co., 176 Mo. 253. There is no issue of fraud or misrepresentation in this case, for there is neither pleading nor proof "that the policy would not have been issued had the company known the real state of facts" and hence an instruction directing a verdict for plaintiff would have been properly given. Christian v. Ins. Co., 143 Mo. 460; Summers v. Ins. Co., 90 Mo. App. 691. These issues are not in this case for the further reason that defendant has failed to attach to the policy or indorse thereon the substance of the application upon which the policy was issued. Sec. 7929, R. S. 1899. (2) The distinction between warranties and representations has been abolished in this state. And defendant's instructions 3 and 4 were properly refused. Sec. 7890 and 7936, R. S. 1899; Ashford v. Ins. Co., 98 Mo. App. 505; Jacobs v. Life Assn., 146 Mo. 523; Aloe v. Life Assn., 164 Mo. 675; Sheurmann v. Ins. Co., 165 Mo. 641; Kern v. Legion of Honor, 167 Mo. 471; Jenkins v. Ins. Co.,

171 Mo. 383; Williams v. Ins. Co., 189 Mo. 70; Keller v. Ins. Co., 198 Mo. 440. The provision in the policy that the same would not take effect unless delivered while Lynch was in good health contravenes sections 7890 and 7936, R. S. 1899, and is void. The condition in the application is an attempt to repeal by application these sections and as such is idle and void. Burns v. Ins. Co., 124 S. W. 539; Williams v. Ins. Co., 73 Mo. App. 612; Ins. Co. v. Coleman, 58 Ga. 251; Ins. Co. v. Leslie, 47 Ohio St. 409; King Brick Mfg. Co. v. Ins. Co., 164 Mass. 291; Emery v. Ins. Co., 52 Me. 322; Burridge v. Ins. Co., 211 Mo. 187. (3) Dr. Hermann as a witness was incompetent for any purpose. Obermeyer v. Mfg. Co., 120 Mo. App. 59; Glasgow v. Railroad, 191 Mo. 347; Smart v. Kansas City, 208 Mo. 162; Beave v. Railroad, 212 Mo. 331. The hypothetical questions propounded to Dr. Hermann were improper for they were not supported by the evidence and called for conclusions which were for the jury and not the doctor to draw. Taylor v. Railroad, 185 Mo. 239. (4) The remarks of plaintiff's attorney to the jury are within the record and the limits of legitimate argument. Besides, they are not open to review since no exception was taken. Objection cannot be made for the first time in a motion for a new trial. Kennedy v. Holladay, 25 Mo. App. 503; Colburn & Hamilton v. Brunswick Flour Co., 49 Mo. App. 419; Sampson v. Railroad, 57 Mo. App. 312; Rose v. McCook, 70 Mo. App. 183; Doyle v. Trust Co., 140 Mo. 1; Casey v. Gill, 154 Mo. 181; State v. Gartrell, 171 Mo. 489.

NORTONI, J.—This is a suit on a policy of life insurance. Plaintiff recovered and defendant prosecutes the appeal.

Defendant, an old line life insurance company, doing business under the laws of this state, on the 23d day of July, 1907, issued its policy of insurance in the amount of $1000 on the life of Michael J. Lynch, paya-

ble in the event of his prior death to his wife, Maggie Lynch, the plaintiff. About six months thereafter, January 29, 1908, the insured died as a result of paresis, while insane, and though proofs of his death were duly made, defendant declined and refused to pay the policy, asserting that it was obtained through misrepresentation and fraud and further that there was a breach of warranty in respect of a condition contained in the policy to the effect that, the insurance should not become effective unless the insured was in sound health at the time the policy was issued.

This suit having been instituted on the policy, defendant answered thereto by interposing three affirmative defenses which will be noticed in their order. For its first defense, it is averred that at the time of making application to it for the insurance, the insured stated therein that he was in good health and that he had never been attended by a physician and that he had never suffered from insanity; that relying upon the truth of said statements, defendant contracted the insurance involved, which, but for its belief in the truth of the statements aforesaid, would not have been issued.

It is averred, too, that each and all of said statements were misrepresentations of fact on the part of the insured in that he was not then in good health but was suffering from a disease known as paresis or softening of the brain; that the insured had been attended by a physician prior to the date of his application; was then under the care of a physician; and that he had suffered and was then suffering from insanity. It is further averred that the said disease, from which insured represented he had never suffered and for which he had been attended by physicians and which at the time rendered his health unsound, directly contributed to and occasioned his death on January 29th thereafter, while in the insane asylum. Wherefore, it is said the matters so misrepresented by insured to defendant act-

ually contributed to the event on which the policy became due and payable and that said misrepresentations were therefore material and rendered the policy void and of no effect. Defendant also tendered all of the premiums which had been paid on the policy. To sustain the issues on her part, plaintiff introduced the policy in evidence, showed the premiums had been paid and proved the death of her husband, together with the fact that proof thereof had been made in accordance with the terms of the policy. Thereupon, to the end of sustaining its affirmative defense, defendant introduced evidence tending to prove that at the time and for some three or four weeks prior to the date on which the policy was issued, the insured was suffering from paresis and had been waited upon by two physicians. But there is no testimony by the physicians themselves as to the nature of his ailment. There is evidence from others, however, tending to prove that at about that time the insured acted queerly, indicating a derangement of the mind. It is said that he talked to himself, possessed a wild expression in the eyes, counted spoons and knives, picked up chips in the yard as a little child, etc. In rebuttal, several witnesses for plaintiff gave testimony tending to prove her husband was an assistant to a stone mason and that he was employed at his trade up to about the time he effected the insurance; that he was in sound health and conducted himself as others do. In other words, that he did not act queerly nor did he count spoons and knives, pick up chips in the yard or possess a wild expression in the eyes. It is conceded, however, throughout the case that about three weeks after the policy was issued and on August 12, 1907, the insured became insane and was conveyed to the asylum, where he remained until his death the following January.

The court submitted the matter of the alleged misrepresentations to the jury in instructions, directing that the burden of proof with respect thereto rested

upon defendant and saying substantially that though
the misrepresentations were made, they were immaterial
to plaintiff's right of recovery, unless the matter or
matters misrepresented actually contributed to the cause
of the death of the insured. The instruction given by
the court for defendant on this feature of the case was
to the same effect and informed the jury if it believed
from the evidence that at the time of making the ap-
plication for insurance Michael J. Lynch was not in
good health and had been attended by a physician or
physicians, was then under the care and advice of a
physician and was suffering from the disease known as
paresis, or softening of the brain, and was then insane,
and that said disease from which insured was then suf-
fering actually contributed to and was the cause of the
death of the insured, then the finding must be for the
defendant. There is substantial evidence in the record
on either side of this question. Indeed, the record
teems with evidence tending to prove that the insured
was suffering from paresis, if not actually insane, some
two or three weeks before the insurance was effected,
but there is an abundance of proof as well to the ef-
fect that he was in sound health at the time and that
the disease from which he afterwards died was not
present. In those circumstances, of course, the mat-
ter was for the jury and the court very properly re-
fused to direct a verdict for defendant on that score.
It may be conceded the testimony shows conclusively
that the insured had been waited upon by two physi-
cians recently before the insurance was effected, but
there is no word in the proof tending to show from
what malady he then suffered, if any, and for what
he was treated, if treated at all, by those physicians.
The mere fact that the application contained a false
statement with respect to the matter that insured had
not been treated by a physician and was in sound
health is not sufficient to render the policy void under
our statute, unless it appears he was treated for the

disease which afterwards occasioned his death. Such a misrepresentation is not a warranty under our insurance law as modified by the rule of the statute and is wholly immaterial, unless it was made with respect to a fact which actually contributed to the contingency or event on which the policy is to become payable. Even then, the question whether such representation concerned a matter which did so contribute is one for the jury under the positive mandate of the statute. The statute referred to is as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury." [Sec. 7890, R. S. 1899; sec. 7890, An. St. 1906.]

See also the following authorities in point: Schuermann v. Union Cent. Life Ins. Co., 165 Mo. 641, 65 S. W. 723; Keller v. Home Life Ins. Co., 198 Mo. 440, 95 S. W. 903; Salts v. Prudential Ins. Co., 140 Mo. App. 142, 120 S. W. 714; Burns v. Met. Life Ins. Co., 141 Mo. App. 212, 124 S. W. 539; Ashford v. Met. Life Ins. Co., 98 Mo. App. 505, 72 S. W. 712; Christian v. Connecticut Mut. Life Ins. Co., 143 Mo. 460, 45 S. W. 268; Cooley's Briefs on Insurance, vol. 3, pp. 1989, 1990.

The second defense relied upon sets forth a warranty, which, it is asserted, is contained in the application and a condition of the policy together, to the effect that, unless the insured was in sound health at the time of issuing the policy, it should not take effect. A breach of this warranty is alleged and defendant prays to be discharged on that account. The court declined to deal with this matter of a breach of warranty and refused an instruction drafted on the theory that the insured had warranted his good health

in the application. This was entirely proper; for it has been many times decided that the statute quoted abrogates the distinction which obtained at common law as between warranties and representations in life insurance contracts and relegates matters which were theretofore regarded as warranties to the same plane as that occupied by representations. [Jenkins v. Covenant Mut. Ins. Co., 171 Mo. 375, 71 S. W. 688; Keller v. Home Life Ins. Co., 198 Mo. 440, 95 S. W. 903; Jacobs v. Omaha Life Assn., 146 Mo. 523, 48 S. W. 462; Salts v. Prudential Ins. Co., 140 Mo. App. 142, 120 S. W. 714; see also Schuermann v. Union Cent. Life Ins. Co., 165 Mo. 641, 65 S. W. 723.] In a recent case a similar matter was invoked as a warranty and we declared the statute applied to the conditions and stipulations in the policy to the effect that it should not take effect unless the insured was in good health at the time as well as to misrepresentations in the application. In either case, the influence of the statute is the same; for the public policy of the state as declared in the statute is not to be thus indirectly evaded. Though the condition in the policy based on the misrepresentation in the application would amount to a warranty prior to the statute, it must now be regarded as within its influence and no longer possessed of the force of a warranty unless the fact of poor health at the time actually contributed to the death of the insured. [Salts v. Prudential Ins. Co., 140 Mo. App. 142, 120 S. W. 714; see also Burns v. Met. Ins. Co., 141 Mo. App. 212, 124 S. W. 539.]

Under the instructions given for both plaintiff and defendant by which the first defense was submitted, the verdict for plaintiff affirmed either that the insured was in good health at the time the insurance was effected or that if he was not in good health and had been visited by physicians his then condition in no way contributed to his death or the event upon which the policy became payable. This verdict responded to the

true issue under the law and the court very properly declined to treat with the second defense on the basis of a warranty; for the doctrine no longer obtains with us in life insurance matters, unless the matter said to be warranted becomes material by contributing to the event which renders the policy payable.

The third count of defendant's answer presents the matter of willful fraud on the part of both the insured and his wife, the plaintiff, in obtaining the insurance and prays that the policy be declared void for that reason. It first avers the insured obtained the insurance by misrepresenting the facts which have been heretofore detailed as to his condition; that he made said representations for the fraudulent purpose of concealing from defendant the true state of his health, etc., in order to obtain the insurance; that the plaintiff, his wife, at the time knew of the insured's impaired condition of health and fraudulently aided and abetted him in procuring the insurance, etc. The court declined to consider this matter, otherwise than as within the influence of our statute above quoted and we believe this was proper, for after the death of the insured, the rule of the statute obtains alike with respect to willful fraud and mere misrepresentations. So much has been expressly decided and the distinction theretofore sharply made and pointed out overruled. In Ashford v. Ins. Co., 80 Mo. App. 638; Van Cleave v. Union Casualty, etc., Co., 82 Mo. App. 668, the Kansas City Court of Appeals declared that matters of willful fraud in obtaining the policy were beside the statute and might be pleaded in bar to an action thereon. But the doctrine was repudiated by the Supreme Court in Kern v. Sup. Council Am. Legion of Honor, 167 Mo. 471, 486, 487, 488, 489, 67 S. W. 252, and the authority of those cases on this question expressly overruled. In one of the same cases on a second appeal, see Ashford v. Met. Life Ins. Co., 98 Mo. App. 505, 72 S. W. 712, the Kansas City Court of Appeals receded from its former position and

in obedience to the ruling of the Supreme Court held that in a suit on the policy after the death of the insured matters of willful fraud in obtaining its issue are to be treated as immaterial, unless the fraud relied upon actually contributed to the cause of death. So the doctrine now obtains to the effect that though the fraud practiced in obtaining the insurance is willful and designedly done, if it consists in matter of fact inducing the issue of the policy, it will be regarded as a material defense in a suit on the policy only when it appears to have been about a matter which actually contributed to the cause of death. Mr. Cooley in his work on Insurance thus states the Missouri doctrine:

"In Klostermann v. Germania Life Ins. Co., 6 Mo. App. 582, the court seems to have taken the position that the Missouri statute, which provides that an untrue statement shall not defeat the policy, unless it relates to a matter contributing to the loss, would apply, whether the statements were made fraudulently or in good faith. But in Ashford v. Metropolitan Life Ins. Co., 80 Mo. App. 638, the court held that the statute would not apply if the representations were willful or fraudulent, calling attention to White v. Insurance Co., 29 Fed. Cas. 1011, in which the Missouri statute was construed, and wherein Judge DILLON expressed the opinion that willful or fraudulent misrepresentations would not come within the operation of the statute. Following the Ashford case, the court in Van Cleave v. Union Casualty & Surety Co., 82 Mo. App. 668, held that a willful misrepresentation would avoid the policy, if it related to a fact made material by the agreement of the parties. Similarly it was said, in Summers v. Metropolitan Life Ins. Co., 90 Mo. App. 691, that the statute did not do away with the defense of actual fraud.

"The doctrine of the Ashford and Van Cleave cases has, however, been overruled in later cases. Thus, in Schuermann v. Union Central Life Ins. Co., 165 Mo. 641, 65 S. W. 723, the court, while conceding that the stat-

ute did not restrain the power of a court of equity to relieve against actual fraud, regarded the plea that the applicant knowingly made untrue statements as a legal, and not an equitable, defense; thus practically announcing the rule that the statute must operate, even if the misrepresentation is willful. The rule was subsequently reiterated in Kern v. Supreme Council American Legion of Honor, 167 Mo. 471, 67 S. W. 252. On the authority of these cases it was held, in Ashford v. Metropolitan Life Ins. Co., 98 Mo. App. 505, 72 S. W. 712, overruling the decision in 80 Mo. App. 638, that a willfully false statement was no defense to the policy, if it related to a matter not contributing to the death of the insured."

It seems the Supreme Court recognizes the authority of a court of equity to cancel the policy before it has become payable by the happening of the event insured against on the grounds of willful fraud which generally obtain in the law apart from the statute, but adheres to the doctrine that after the death of the insured the liability of the company and its right to be relieved from the obligation of the policy though fraudulently induced is to be determined under the rule of the statute. [Schuermann v. Union Cent. Life Ins. Co., 165 Mo. 641, 65 S. W. 723.] Indeed, in the case cited, the defendant appealed to the chancellor for a cancellation of the policy on the grounds that the insurance was obtained by the insured through false statements and representations known to him at the time to be untrue by incorporating a count to that effect in its answer to a suit on the policy, and the court denied the right to such relief after the cause of action on the policy had accrued. The averments of the answer in that case as reported import fraud in the inducement but do not disclose the representations to have been material within the purview of the statute. On this question a most recent case may be cited as directly in point. A study of defendant's refused instruction, number 2, in Keller v.

Home Life Ins. Co., 198 Mo. 440-453, 95 S. W. 903, and the remarks of the court therein, p. 462, will reveal the thought and an application of the doctrine. It is entirely clear that under the authorities the only fraud of the insured Michael J. Lynch in obtaining the insurance available to defendant in a suit on the policy to the end of relieving it of liability is such fraudulent statements as he may have made which induced it to issue the policy and are material because they concerned a matter which contributed to his death. This matter was all submitted to the jury by proper instructions under the first count of the answer and the verdict is responsive thereto as heretofore indicated. In so far as the fraud of the present plaintiff is concerned, it depends, according to the averment of the answer, wholly upon that of the insured, for she is alleged to have aided and abetted him therein. Of course, if the showing of fraud be insufficient as to the insured in those circumstances, it would be insufficient as well with respect to his wife who is alleged to be his aider and abettor, for if the insured perpetrated no fraud available to defendant as a defense, one who aided and abetted him is no more culpable.

An argument is directed against remarks of plaintiff's counsel in his address to the jury which are said to be unfair and "inflammatory." If the remarks were improper and the court declined to rebuke counsel, as it did, the defendant should have preserved an exception to the ruling of the court thereon and this it omitted to do. In order to obtain a review of such matters on appeal, an exception must be preserved at the time. It avails nothing to invoke the matter for the first time in the motion for a new trial. [Doyle v. Missouri, etc., Trust Co., 140 Mo. 1, 41 S. W. 255; Kennedy v. Holladay, 25 Mo. App. 503.]

The other questions presented in the brief are sufficiently considered and the views of the court indicated

thereon by what has been said. The opinion will not be prolonged by discussing them *seriatim*.

The judgment should be affirmed. It is so ordered. All concur.