POWELL v. MARCH et al. (No. 7184.)

(Court of Civil Appeals of Texas. Dallas. June 20, 1914. Rehearing Denied Oct. 17, 1914.)

1. LIMITATION OF ACTIONS (§ 100*)—RUNNING OF STATUTE—ACTION BASED ON FRAUD.

Where the grantor fraudulently misrepresented the number of acres conveyed, neither the two nor the four years statute of limitations will begin to run against an action for damages for shortage, until the fraud is discovered, or until by the use of reasonable diligence it could have been discovered.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

2. LIMITATION OF ACTIONS (§ 177*)—PLEADING—AVOIDANCE OF LIMITATIONS.

Where one seeks to avoid the bar of limitations, on the ground of fraud, he must allege the facts upon which he relies, so that the court may determine from the pleadings whether the statute has been tolled.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 663–666; Dec. Dig. § 177.*]

3. LIMITATION OF ACTIONS (§ 199*)—PLEADING—QUESTION FOR COURT.

Where a plaintiff seeks to avoid the bar of limitations on the ground of defendant's fraud, and his petition shows a failure to avail himself of means of information, the question whether the statute was tolled is one for law of the court.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 727–730; Dec. Dig. § 199.*]

4. LIMITATION OF ACTIONS (§ 100*)—RUNNING OF STATUTE—FRAUD.

Where a grantor fraudulently misrepresented the number of acres conveyed, a purchaser from his grantee cannot toll the running of limitations against his action for deficiency by claiming that he relied upon the representations of the original grantor that the property had been surveyed and contained the number of acres claimed, there being no such peculiar relation of confidence and trust between the parties as would bring them within the rule that where a seller possesses information concerning the property, and fails to disclose it to the buyer, the failure to disclose his exclusive knowledge affords ground for relief.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

5. LIMITATION OF ACTIONS (§ 182*)—PLEADING—NECESSITY.

In an action by the ultimate purchaser of land against his immediate grantor and the original grantor for damages for shortage, the immediate grantor, who did not plead limitations and admitted the truth of the allegations of the peti-tion, seeking by cross-action judgment against the original grantor, cannot take advantage of the bar of limitations relied upon by the original grantor.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 676–680, 682, 695, 705; Dec. Dig. § 182.*]

Appeal from District Court, Delta County; Wm. Pierson, Judge.

Action by C. H. Powell against John Abe March, Jr., and others, and Ed. Coston. From a judgment for defendants, plaintiff appeals. Affirmed in part, and in part reversed and remanded.

Wright & Patrick, of Paris, for appellant. Newman Phillips, of Cooper, and A. H. Dashiell, of Terrell, for appellees.

TALBOT, J. Appellant brought this suit August 29, 1911, against the appellees to recover the sum of $1,936, with interest thereon at the rate of six per cent. per annum from the 23d day of March, 1907, the value of an alleged shortage of $35^2/_{10}$ acres in the quantity of certain lands sold him. The petition alleges: That on the 2d day of February, 1907, the appellee E. D. Coston, who resided in Delta county, Tex., sold and conveyed to John Abe March, who resided in Tom Green county, Tex., certain lands situated in Delta county, Tex. That said lands were purchased by the said John A. March by the acre for the sum of $50.77 per acre, and that the said appellee Coston represented to the said March that the lands conveyed to him consisted of $498^3/_{10}$ acres, being 260.6 acres in the N. Petty survey and 237.7 acres in the H. Petty survey, and promised, before making the deed, to have same surveyed by the county surveyor, and to incorporate the field notes prepared by said surveyor into said deed of conveyance. That Coston had the lands surveyed by the county surveyor, who correctly surveyed the same and returned to said Coston true and correct field notes for said two tracts of land. That by reason of his being a resident of Tom Green county and being such a distance from the land in question, said John Abe March could not personally supervise said surveying, but, reposing special confidence in the honesty, integrity, and fairness of defendant Coston, said March permitted said survey to be made under his direction, and said Coston reported to defendant March that said survey had been made, and that the deed made by Coston to March contained the correct field notes of said two tracts of land, and that the total acreage of same amounted to $498^3/_{10}$ acres as stated in said deed. That said statements and representations so made by Coston were believed by said March to be true, and were relied and acted on by him, but that said statements were false and untrue, and were knowingly, fraudulently, and deceitfully made by said Coston for the purpose of inducing said March to consummate

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

said trade or sale, he, the said Coston, knowing that said March would not consummate said sale if said tracts did not contain $498^3/_{10}$ acres as stated in said deed, and knowing that said March believed in his integrity and honesty, and that by reason of his residence in Tom Green county and distance from said land could not question the statements of said Coston as to acreage after having a survey made of said land. That said Coston, for the purpose of defrauding said March, fraudulently and deceitfully changed and altered the field notes prepared by the surveyor, increasing some of the calls in same, changing the two calls on the northern boundary as follows: The first from 33 poles to $49^1/_2$ poles; the second from 41 poles to $51^1/_4$ poles, the east and west boundary line being $209^1/_2$ poles, which falsely showed the acreage of said land to be $35^2/_{10}$ acres in excess of the true acreage of same, and thereafter said Coston falsely and fraudulently incorporated said field notes as changed by him into the deed to said March, and falsely and fraudulently represented to said March that said deed contained the true and correct field notes of said land and said tracts, an acreage of $498^3/_{10}$ acres, when in fact it only contained $463^2/_{10}$ acres. That said March accepted and paid for $35^2/_{10}$ acres of land, the sum of $50.77 in money, or its equivalent, which he did not receive, believing same to be conveyed by said deed, when if he had known the real facts, he would not have consummated said sale.

It is further alleged that the said John Abe March exercised reasonable diligence and care in having said land surveyed as aforesaid, but that by reason of his confidence in the honesty and integrity of said Coston he did not discover said fraud; that on the 23d day of March, 1907, by a warranty deed of same date, the said John Abe March conveyed the same land conveyed to him by Coston to C. H. Powell and W. T. Cawley, of Tom Green county, Tex.; that the said land deeded to said Powell and Cawley by said March was represented by him to contain $498^3/_{10}$ acres, being $260^6/_{10}$ acres in the N. Petty survey and $237^7/_{10}$ acres in the H. Petty survey, and is so stated in said deed, and the field notes given in said deed show said two tracts to contain the respective amounts above set out; that at the time said March made the representations above set out, which were wholly false, he also represented to said Powell and Cawley that it would be a useless and unnecessary expense on their part to have said land surveyed; that prior to his purchase, he had the county surveyor of Delta county survey both tracts of land and that the field notes contained in his (March's) deed from E. D. Coston and the acreage shown therein, were the actual field notes of said land made from survey of same, and the acreage computed by the surveyor therefrom, all of which representations and statements as set out were false and untrue, but were believed and relied on by said C. H. Powell and W. T. Cawley, and, so believing and relying on same and on the honesty and integrity of said March, they refrained from having said land surveyed, and paid said March therefor according to the acreage represented by him and shown by said deed; that said land was purchased by said C. H. Powell and W. T. Cawley by the acre for the sum of $55 per acre, or its cash equivalent in the value of certain lands deeded said March by Powell and Cawley; that the representations made by March to Powell and Cawley, as to the acreage contained in said tracts and as to the correctness of the survey made thereof by him, were false and wholly untrue, but that said E. D. Coston, as heretofore alleged, had falsely and fraudulently and deceitfully increased the length of the two calls on the northern boundary of said survey, and changed the true field notes of the surveyor as heretofore alleged, so as to show in said deed and by said field notes that said survey contained $35^2/_{10}$ acres more than it did actually contain, and said Powell and Cawley, believing and relying and acting on the representations and statements heretofore made, paid said March therefor the sum of $55 per acre cash or its equivalent in the actual value of said lands deeded said March in consideration of said conveyance, when if they had known the real facts, and that said tracts did not contain the $35^2/_{10}$ acres, they would not have consummated said sale; that on the 10th day of November, 1908, the plaintiff, C. H. Powell, who was a partner of W. T. Cawley in the purchase of the lands heretofore described, without the knowledge of the fraud that had been perpetrated by said E. D. Coston, and still believing that said tracts contained the acreage shown by said deeds and field notes, and relying upon the correctness of the survey heretofore made for March and upon the integrity and honesty of said Coston and March, purchased from W. T. Cawley by warranty deed of said date, for the sum of $55 per acre in cash or its equivalent in partnership lands deeded said W. T. Cawley, his undivided one-half interest in the two tracts of land heretofore described; that at the time of said last-named purchase, both said C. H. Powell and the defendant, W. T. Cawley, were mutually mistaken as to the acreage of said land, and, relying on representations heretofore set out as to the acreage of said tracts and as to the correctness of surveys of same and correctness of field notes in the deeds, believed said acreage to be as stated in said deeds and to avoid useless expense of survey did not have said land surveyed; that the said fraud perpetrated by defendant Coston and March as aforesaid upon this plaintiff was not discovered until the 15th day of July, 1911, when, desiring to sell a portion on the east

side of said survey to F. D. Shelton, he had the same surveyed, and it fell short, whereupon the plaintiff then had another survey made of the entire tracts, and discovered the shortage as heretofore set out. Plaintiff avers that he would not have purchased same if he had known of the shortage; that by reason of the fraud and deceit of the defendant E. D. Coston as heretofore set out, and the false representations and fraud of the said John Abe March and of the mutual mistake of W. T. Cawley and plaintiff as heretofore set out, this plaintiff has been deprived of the sum of $1,936, with interest on said amount from the 23d day of March, 1907, at the rate of 6 per cent. per annum; that all of said land contained in said two tracts is of like kind, character and value, and that all of the fraudulent acts, representations, and statements heretofore referred to were done and made in Delta county, Tex., on to wit, the ———— day of ————, 1907, and the ———— day of ————, 1908; that since the matters heretofore set out, the said John Abe March has died; that John Abe March, Jr., Lucile March, and Lela Neill (née March) and husband, Robert T. Neill, are the sole heirs at law of said John Abe March, deceased, and are the present owners of all of the estate of the said John Abe March and of the lands and moneys paid him by plaintiff for said land, and as such are responsible to plaintiff for said land, and as such are responsible to plaintiff for said fraud and deception of the said John Abe March, deceased. That plaintiff made inquiries as to the character of E. D. Coston and of his reputation for truth and veracity before purchasing said property, and was advised that same was good, that he personally knew the reputation of John Abe March to be good, and that he exercised all possible diligence to discover any fraud, but same was not discovered by him until the date heretofore alleged; that the original fraud practiced by the said E. D. Coston on John Abe March proximately caused plaintiff to be deprived of his money as set out, in that it caused the fraud and deceit of John Abe March, plaintiff's immediate grantor, and rendered possible the mutual mistake of plaintiff and W. T. Cawley.

The defendant Coston pleaded a general and special demurrer to plaintiff's petition, and a special answer, which it is unnecessary to state. The other defendants answered, admitting that the allegations of plaintiff's petition were true, but charged that whatever representations or warranties the said John A. March, deceased, had made, in reference to the quantity of the land sold—

"were made by him innocently and in reliance upon and belief in the statements and representations made to him by his immediate grantor, E. D. Coston, that the fraud, if any, with reference to the amount of land obtained in the H. Petty headright survey conveyed by John Abe March to C. H. Powell and W. T. Cawley was caused wholly by the false and fraudulent representations made to the said John Abe March by the defendant E. D. Coston, said representations being both verbally and by his written deed."

The prayer of the answer of these defendants is for judgment against E. D. Coston for the sum of $1,936, as same is prayed for in plaintiff's petition. When the case was called for trial the defendant Coston presented his demurrer to plaintiff's petition, asserting that it showed upon its face that the cause of action alleged was barred by the statutes of limitation of two and four years. This demurrer was sustained, and, the plaintiff declining to amend, the case was dismissed and he appealed.

[1] Appellant presents two assignments of error but a disposition of the first will dispose of the second. The first is as follows:

"The court erred in sustaining defendants' special exceptions and demurrer setting up the statute of limitations of two and four years to plaintiff's petition and in rendering judgment dismissing plaintiff's suit, for the reason that the facts set out in plaintiff's petition show that plaintiff's cause of action was not barred by either the two or four years statute." ·

The proposition contended for is that:

"The cause of action was not barred either by the statute of limitations of two years or four years, for the reason that the petition showed on its face that plaintiff was prevented from discovering the shortage by fraud and mutual mistake and did not discover the same until the 15th day of July, 1911, a short time before filing suit, although plaintiff used due diligence."

It is the settled law of this state that fraud prevents the running of the statute of limitations only until the fraud is discovered, or until by the use of reasonable diligence it could have been discovered. Smith v. Fly, 24 Tex. 350, 76 Am. Dec. 109; Munson v. Hallowell, 26 Tex. 475, 84 Am. Dec. 582; Anding v. Perkins, 29 Tex. 348; Bremond v. McLean, 45 Tex. 10; Kuhlman v. Baker, 50 Tex. 636; Alston v. Richardson, 51 Tex. 6; Bass v. James, 83 Tex. 110, 18 S. W. 336; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48. So that "the right of action will be deemed to have accrued when the fraud was, or by the use of reasonable diligence could have been discovered, and limitation is put in motion from such date."

[2-4] The acts · constituting the fraud charged are fully set out in plaintiff's petition, but it is only alleged that March "exercised reasonable diligence and care in having said land surveyed," and that "by reason of his confidence in the honesty and integrity of said Coston did not discover said fraud," and "that plaintiff made inquiries as to character of E. D. Coston and reputation for truth and veracity before purchasing said property, and was advised that same was good; that he personally knew the reputation of John Abe March to be good, and that he exercised all possible diligence to discover any fraud." Thus in the most general terms does the plaintiff allege the diligence exercised by him to discover the

fraud charged to have been practiced by the defendant Coston, and it seems useless to discuss the proposition that such allegations are insufficient to meet the requirements of the rule of pleading in such case adopted in this state. The rule, where one seeks to avoid the bar of the statute on the ground of fraud, is that he must allege the facts upon which he relies, so the court may determine from the pleadings whether he is entitled to the relief sought, assuming, as must be done on demurrer, such allegations to be true. If, as has been well said, it appears from the complainant's own allegations that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would disclose; and, a failure to avail himself of such means or avenues of information appearing, the issue presented is one of law for the decision of the court, and not a question of fact for the determination of the jury. Boren v. Boren, supra. The plaintiff alleged that the representations made by the defendant Coston and the fraud practiced by him occurred on or before the 2d day of February, 1907, and that the fraud was not discovered by him until July 15, 1911, when, desiring to sell a portion of the land in question, he had it surveyed and discovered the shortage of the land, and the excuse offered for not sooner discovering it, and hence the fraud, is that he relied upon the special confidence reposed by John A. March, Sr., one of the grantors, "in the integrity, honesty, and fairness of defendant Coston," whereby the said Coston was permitted to have the land surveyed, etc., and therefore failed to resort to that method himself to ascertain the quantity of the land he was buying. This we think was insufficient. No such peculiar relation of confidence and trust is shown as would bring the case within the rule that where one of the parties possess information concerning the rights of the other to property contracted for and fails to disclose his exclusive knowledge, such failure affords grounds for relief. The case made here by the pleading in this respect is that the plaintiff relied upon his, or March's, confidence in the integrity, honesty, and veracity of Coston to have the land surveyed and correct field notes incorporated into the deed, and for that reason did not resort to the very simple and usual means at hand of surveying the land to find out the number of acres in the tract. That such reliance is not a sufficient excuse, especially after the elapse of so long a time, for the failure to use the means at hand to discover fraud of the character charged against Coston is affirmed by the case of Bass v. James, cited above, in which the facts were quite similar to the facts in the case at bar. In that case it appears that Bass relied upon his confidence in the integrity and veracity of James "as an excuse in failing to resort to the usual methods to ascertain the quantity of land he was buying," and there, as here, it did not appear that during the time that intervened between the making of the alleged fraudulent representations and the filing of the suit appellee "made any representation or did anything that was calculated to keep alive the effect produced by the representations made when he sold the land, or that was calculated to induce appellant not to use reasonable diligence to discover and ascertain the quantity of land contained in the calls of his deed," and it was held that limitation ran from the date of sale, and that two years would bar the action. In this connection the Supreme Court quoted with approval the following remarks made in the case of Kuhlman v. Baker, 50 Tex. 636:

"If the alleged fraud constituted a sufficient reason why appellant did not, at the time the sale was made, discover that the quantity was not as represented, his subsequent failure to inform himself of such an important matter as the quantity of land contained in the tract purchased was attributable to his neglect and want of ordinary precaution. It does not appear that after the sale any intervening representations were made by appellee as to the quantity of land that would induce appellant to relax the diligence required of him as an ordinary prudent man to ascertain the quantity of land he actually purchased."

Following this quotation, the Supreme Court, speaking through Judge Fisher, said:

"If the existence of confidence in the integrity and veracity of the vendor is a sufficient excuse to relieve the vendee from the use of ordinary diligence to discover so important a matter as the quantity of land sold, then this excuse would be effective so long as the confidence continued, and limitation would commence to run, not from the time that the quantity of land could have been discovered by the exercise of ordinary diligence, but from the time the confidence ceased to exist. We do not believe it is the policy of the law that this operation of the statute should depend upon such an uncertain contingency, the happening of which is dependent upon a 'chapter of accidents.' The presumption is that if the party affected by the fraudulent transaction might with ordinary care have seasonably detected it, he seasonably had actual knowledge of it. If three years after the transaction the appellant by methods then used successfully detected the fraud, we see no reason why a resort to such methods before then could not have accomplished the same purpose. We think the court rightfully held the action barred."

These remarks are peculiarly applicable to the case before us as made between the plaintiff and the defendant Coston, and we conclude that the judgment as to them should be affirmed.

[5] A different disposition of the appeal, however, must be made as to the appellees, Lela Neill, Robert Neill, John March, Lucile March, and W. T. Cawley. These parties submitted to the jurisdiction of the court, and did not plead the statute of limitation in bar of plaintiff's action against them, but, on the contrary, admitted the truth of his

allegations, and sought by cross-action judgment against Coston.

Appellant's assignments of error complain without qualification of the court's action in dismissing his case, and as the whole case, that is, the case made against the above-named appellees, as well as the case made against the appellee Coston, was dismissed, the judgment as to them must be reversed and cause remanded; and it is so ordered.

Affirmed in part, reversed and remanded in part.